IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | No. C 11-01331 CW (JSC) |
| Plaintiff, | **REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| LANCE CHRISTIAN WHITE, et al., | |
| Defendants. | |

In this action brought under the Federal Communications Act and The Cable & Television Consumer Protection and Competition Act, Plaintiff Joe Hand Promotions, Inc. moves for Final Default Judgment against Defendants Lance Christian White, individually, and Rise Restaurant, d.b.a. British Bankers Club, seeking default judgment, an award of statutory damages, and attorneys' fees and costs. The Court finds this matter suitable for disposition without a hearing and VACATES the August 25, 2011 hearing. See Civil Local Rule 7–1(b). Having carefully considered the papers submitted by Plaintiff, the Court recommends that the motion be GRANTED in part.

**FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff Joe Hand Promotions is a commercial distributor and licensor of sporting events. Plaintiff purchased the right to distribute a boxing match, *C 114: Rampage v. Evans Broadcast* (Broadcast), via closed circuit television and via encrypted satellite signals, on May 29, 2010. (Dkt. No. 1 ¶¶ 14-17). The Broadcast originated via satellite uplink and was

retransmitted to cable systems and satellite companies via satellite signal. Pursuant to the purchase contract, Plaintiff entered into sublicensing agreements with various commercial entities in California allowing them to publicly exhibit the Broadcast to their patrons. (Dkt. No. 1 ¶ 15). Plaintiff alleges that it has expended substantial monies to transmit the Broadcast to those entities in California. (Dkt. No. 1 ¶ 17).

Plaintiff further alleges that on May 29, 2010 Defendants Lance Christian White and Rise Restaurant, d.b.a. British Bankers Club ("Defendants"), exhibited the Broadcast at the British Banker's Club including all undercard bouts and the entire television broadcast without first obtaining a license for the Broadcast; instead, Defendants unlawfully intercepted, received and/or descrambled the satellite signal and/or cable signal for the Broadcast. (Dkt. No. 1 ¶¶ 17, 25). Defendants did so with full knowledge that the Broadcast was not to be received and exhibited by entities unauthorized to do so, and that Defendants' actions were willful and for purposes of direct or indirect commercial advantage or private financial gain. (Dkt. No. 1 ¶¶ 14-27).

In support of these allegations Plaintiff has submitted an affidavit from a private investigator, Tad Whitaker, who observed the Broadcast at the British Banker's Club on May 29, 2010. (Dkt. No. 22, ¶. 2-3). Mr. Whitaker observed two television sets in the main bar area and heard a third television set playing in a private room off the main bar area. Mr. Whitaker observed the second round of the match between undercard fighters Duffee and Russow and he observed all three rounds of the main event between Rampage Jackson and Rashad Evans on the two television sets in the main bar area. Mr. Whitaker also observed a cable box behind the bar, but did not observe a satellite dish on the premises. During the hour and forty-five minutes he was present at the establishment Mr. Whitaker took three headcounts of 17, 19 and 24 individuals in the main room. He observed 10 people in the private room during his second count.

Plaintiff subsequently filed a Complaint in this Court based on the above allegations asserting the following three claims: 1) violation of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605, et seq.; 2) violation of The Cable & Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553, et seq.;

and 3) state law conversion. Defendants failed to file a responsive pleading or otherwise appear and the clerk entered their default pursuant to Federal Rule of Civil Procedure 55(a) on June 7, 2011.

Plaintiff now moves for default judgment asking for an award of statutory and enhanced damages in the amount of $110,000 and damages for the tort of conversion, as well as attorneys' fees and costs. Although the deadline for opposing the motion has passed, see Civ. L.R. 7-3(a), Defendants have not filed an opposition nor otherwise communicated with the Court.

## DISCUSSION

### I. Jurisdiction and Service of Process

When a court is considering whether to enter a default judgment it has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place."). Here, Defendant Lance Christian White is a resident of California and Defendant Rise Restaurants, d.b.a. British Bankers Club, has its principal place of business at 1090 El Camino Real, Menlo Park, California 94025. The Court may therefore exercise personal jurisdiction. Further, the Court has subject matter jurisdiction because Plaintiff's claims arise under 47 U.S.C. §§ 553, 605.

A court is also required to "assess the adequacy of the service of process on the party against whom default is requested." Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters, No. 00–0395, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). Federal Rule of Civil Procedure 4(e) provides that service in accordance with California law is proper. Under California law, if personal service of the summons and complaint cannot be accomplished with reasonable diligence, then substituted service is proper. See Cal. Code Civ. Proc. § 415.20(b). Here, Plaintiff has submitted a declaration from a process server indicating that three attempts were made to effect personal service of the Summons and Complaint in this action. (Dkt. No. 10). On the third occasion, when personal service was not possible through reasonable diligence, substituted service in accordance with California

Code of Civil Procedure section 415.20 was effected.  The Court finds that service of process was proper in this case.

## II.     **Default Judgment**

After entry of default, a court may grant default judgment on the merits of the case. See Fed. R. Civ. P. 55.  The factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party.  Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977).  "The district court's decision whether to enter a default judgment is a discretionary one."  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  A court should consider the following factors in determining whether to enter default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  For the reasons discussed below, the majority of these factors support default judgment on two of Plaintiff's claims.

First, if the motion for default judgment were to be denied, then Plaintiff would likely be left without a remedy given Defendants' failure to appear or otherwise defend this action. See Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2002).  Second, because Defendants have not answered the Complaint or otherwise appeared in this action, the possibility of a dispute concerning material facts is unknown.  Third, Plaintiff properly served Defendants and there is no evidence in the record that Defendants' failure to appear and otherwise defend this action was the result of excusable neglect. (Dkt. No. 7). The Court notes that not only were the summons and Complaint served on Defendants but also the motion for entry of default (Dkt. Nos. 13 & 14) and the currently pending motion for default judgment (Dkt. Nos. 25 & 26).

Two factors weigh against default judgment.  First, the amount of money at stake in the action suggests that default judgment may be inappropriate.  Plaintiff seeks the maximum

4

possible statutory damages in this action, $110,000. In this regard, Plaintiff's damages request is disproportionate to the harm alleged. See Joe Hand Promotions Inc. v. Meola, No. 10-4781, 2011 WL 2111802, at *4, (N.D. Cal. Apr. 22, 2011). Thus, this factor weighs against default judgment. In addition, the seventh Eitel factor–balancing the policy consideration that whenever reasonably possible cases should be decided on their merits--weighs against default judgment. Eitel, 782 F.2d at 1472. Nonetheless, because the majority of other factors weigh in favor of default judgment the Court recommends that default judgment be entered against Defendants.

Having determined that on balance the Eitel factors discussed above support Plaintiff's motion for default, the Court turns to the merits of Plaintiff's substantive claims and the sufficiency of the evidence (the second and third Eitel factors). These factors essentially require Plaintiff to state a claim on which it may recover. Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978). Plaintiff makes claims for (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; and (3) conversion.

47 U.S.C. section 605 "prohibits commercial establishments from intercepting and broadcasting to its patrons *satellite* cable programming." J & J Sports Prods., Inc. v. Mosley, No. 10–5126, 2011 WL 2066713, at *3 (N.D. Cal. Apr. 13, 2011) (emphasis in original). In contrast, 47 U.S.C. section 553 "prohibits a person from intercepting or receiving or assisting in intercepting or receiving any communications service offered over a *cable* system." Id. (emphasis in original). "A signal pirate violates section 553 if he intercepts a cable signal, [but] he violates [section] 605 if he intercepts a satellite broadcast." J & J Sports Prods., Inc. v. Manzano, No. 08–01872, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008). "Plaintiff may not recover under both 47 U.S.C. § 605 and 47 U.S.C. § 553." J & J Sports Prods. v. Ro, No. 09-02860, 2010 WL 668065, at *3 (N.D. Cal. Feb. 19, 2010).

Here, Plaintiff alleges both a violation of 47 U.S.C. § 605 and § 553.[1] However, Mr. Whitaker observed a cable box, but not a satellite dish at the British Banker's Club on May 29, 2010. (Dkt. No. 22, p. 2). Plaintiff nevertheless alleges that it cannot determine the

---

[1] The Complaint acknowledges that Defendants "can be liable for only (1) of these statutes." (Dkt. No.1 ¶ 30).

5

1  precise means used to access the Broadcast since Defendants did not answer the
2  Complaint and that it "should not be prejudiced because it cannot isolate the precise means of
3  signal transmission." (Dkt. No. 23, p. 9).

4       Given Mr. Whitaker's observation of the cable box and not a satellite dish, the Court
5  finds Plaintiff's argument that it is entitled to relief under 47 U.S.C. § 605 unpersuasive.
6  Courts have logically found that it is unlikely that a defendant would use both a cable box
7  and a satellite dish to broadcast a single program simultaneously. See, e.g., J & J Sports
8  Prods., Inc. v. Seldner, No. 10–5137, 2011 WL 2650961, at *2 (N.D. Cal. Jul 6, 2011); J & J
9  Sports Prods., Inc. v. Guzman, No. 08–5469, 2009 WL 1034218, at *2 (N.D. Cal. Apr. 16,
10 2009). Beyond alleging that it should not be "prejudiced," Plaintiff offers no explanation as
11 to why it is entitled to relief under Section 605, the statute with the higher minimum damages
12 award and requirement for attorneys' fees and costs, rather than Section 553. As another
13 court held in considering a similar request for default judgment: "Plaintiff argues that it
14 'should not be prejudiced' because it cannot determine the means of transmission, however,
15 if plaintiff wanted to prove this, they could have filed a third party subpoena or requested an
16 order for inspection." J & J Sports Prods. v. Ro, No. 09-02860, 2010 WL 668065, at *3
17 (N.D. Cal. Feb. 19, 2010). The Ro court noted that a defendant's default does not eliminate
18 the opportunity to take third party discovery. See id. Accordingly, the Court concludes that
19 Plaintiff has failed to state a claim for relief under 47 U.S.C. § 605 and recommends that the
20 motion for default judgment be denied on the Section 605 claim.

21      With respect to Plaintiff's claim for relief under 47 U.S.C. § 553, the Court finds that
22 Plaintiff has sufficiently alleged a basis for relief. Plaintiff has established through Mr.
23 Whitaker's affidavit that Defendants were exhibiting the Broadcast without permission
    presumably through the cable box he observed behind the bar.

24      Plaintiff has similarly stated a claim for relief on the conversion claim under
25 California Civil Code § 3336. The elements of a conversion claim in California are "(1)
26 ownership or right to possession of property, (2) wrongful disposition of the property right
27 and (3) damages." G.S. Rasmussen & Assoc. v. Kalitta Flying Serv., 958 F.2d 896, 906 (9th
28 Cir. 1992). Plaintiff alleges ownership over the nationwide distribution rights for the

Broadcast, Defendants' misappropriation of this ownership right through the intentional and unlawful interception of the Broadcast, and damages based on the denial of the license fee to which Plaintiff would otherwise have been entitled.

Accordingly, the Court concludes that Plaintiff has adequately stated a claim under 47 U.S.C. § 553 and for conversion. Because Plaintiff has adequately stated a claim for relief on these two claims, and because the majority of the remaining Eitel factors weigh in favor of a default judgment, the Court recommends that Plaintiff's Motion for Default Judgment be granted in part.

## III. Damages and Attorneys' Fees

### A. Statutory Damages

Plaintiff seeks a total of $111,800 in damages by arguing that he is entitled to statutory damages under 47 U.S.C. § 605(e)(3)(c) as well as enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii) in the statutory maximum amount of $110,000. In light of the above conclusion that Plaintiff has failed to state a claim for relief under Section 605, the Court instead analyzes Plaintiff's request for statutory damages under Section 553.

Under 47 U.S.C. section 553(c)(3)(A)(ii) Plaintiff is entitled to damages of no less than $250, but no more than $10,000, in an amount the Court considers just. "The Court may also enhance the award of damages by up to $50,000 if it finds that the conduct was 'committed willfully and for the purposes of commercial advantage or financial gain.'" J & J Sports Prods., Inc. v. Seldner, No. 10-5137, 2011 WL 2650961, at *1 (N.D. Cal. Jul. 6, 2011) (quoting 47 U.S.C. § 553(c)(3)(B)). In determining damages under this section, courts consider a variety of factors including "use of a cover charge, increase in food price during programming, presence of advertising, number of patrons, number of televisions used, and impact of offender's conduct on claimant." J & J Sports Prods., Inc. v. Concepcion, No. 10–5092, 2011 WL 2220101, at *4 (N.D. Cal. Jun. 7, 2011). Courts also consider whether a defendant is a repeat offender. See, e.g., J & J Sports Prods., Inc. v. Paniagua, No. 10-05141, 2011 WL 996257, at *2 (N.D. Cal. Mar. 21, 2011) (awarding enhanced damages for a repeat offender). In addition, courts consider the actual cost of a commercial license, defendant's incremental profits and the need to deter piracy. See, e.g., J & J Sports Prods., Inc. v.

Mosley, No. 10-5126, 2011 WL 2066713, at *5 (N.D. Cal. Apr. 13, 2011) (calculating actual losses based on the license fee and an estimate of defendant's potential profits); J & J Sports Prods. v. Ho, 10-01883, 2010 WL 3912179, at *1 (N.D. Cal. Oct. 5, 2010) (stating that "[a] traditional method of determining statutory damages is to estimate either the loss incurred by the plaintiff or the profits made by the defendants") (internal citations omitted).

Here, the motion for default judgement states that Defendants did not impose a cover charge and there is no allegation in the Complaint and no evidence in the record of increased food or beverage prices as a result of the Broadcast.[2] A commercial license for the Broadcast would have cost $1,100.00.[3] Defendants' establishment is alleged to have a 300 person capacity; however, Mr. Whitaker's three headcounts indicated that there were 17, 19 and then 24 individuals present, respectively, plus a possible 10 additional individuals in the private room. There is no allegation that Defendants are repeat offenders.

Accordingly, the Court recommends awarding Plaintiff $1,400.00 in statutory damages under 47 U.S.C. § 553(c)(3)(A)(ii) representing the $1,100.00 in actual losses based on the license fee, plus $300.00 to account for Defendants' additional possible profits from food and beverage sales. See Joe Hand Promotions, Inc., v. Meola, No. 10-4781, 2011 WL 2111802, at *5 (N.D. Cal. Apr. 22, 2011) (awarding $1,000 in statutory damages based on plaintiff's actual losses and $5,000 in enhanced damages under Section 605 when 50 patrons were present and no cover change was imposed); J & J Sports Prods, Inc. v. Mosley, No. 10-5126, 2011 WL 2066713, at *5 (N.D. Cal. Apr. 13, 2011) (awarding $2,500 based plaintiff's actual losses and $2,500 in enhanced damages under Section 553 when 17 patrons were present and no cover charge was incurred); Joe Hand Promotions Inc. v. Piacente, No. 10–3429, 2011 WL 2111467, at *6 (N.D. Cal. Apr. 11, 2011) (awarding $1,000 in statutory

---

[2] Although Mr. Whitaker's affidavit states that he paid a $5.00 cover charge, Plaintiff's motion for default repeatedly states that Mr. Whitaker was not charged a cover charge. Compare Dkt. No. 22, p. 2 with Dkt. No. 23, ¶. 13, 15, 20. The Court relies on the statements made in the brief for purposes of determining the appropriate damages amount.

[3] As discussed below in Section III.C, Plaintiff's motion for default and the supporting affidavit of Joe Hand, Jr., the President of Joe Hand Promotions, inconsistently represent that the license would have cost $1,800.00 and $1,100.00, respectively. For purposes of determining statutory damages, the Court assumes the amount attested to by Joe Hand, Jr. in the affidavit is the correct amount. (Dkt. No. 27).

8

damages based on plaintiff's actual losses and $5,000 in enhanced damages under Section 605 when 25 patrons were present and no cover change was imposed); J & J Sports Prods. v. Ho, 10-01883, 2010 WL 3912179, at *1 (N.D. Cal. Oct. 5, 2010) (awarding $1,600 in statutory damages based on plaintiff's actual losses plus $10,000 in enhanced damages under Section 605 when 68 patrons were present and no cover charge was imposed); Garden City Boxing Club, Inc. v. Lan Thu Tran, No. 05-05017, 2006 WL 2691431, at *1-2 (N.D. Cal. Sept. 20, 2006) (awarding $1,000 in statutory damages based on plaintiff's actual losses and $5,000 in enhanced damages under section 605 when 40 patrons were present and a $10 cover charge was imposed); Kingvision Pay-Per-View, Ltd. v. Chavez, No. 00-2270, 2000 WL 1847644, at *3 (N.D. Cal. Dec. 11, 2000) (awarding $1,000 in statutory damages based on plaintiff's actual losses and $5,000 in enhanced damages under section 605 when 40 patrons were present and a $10 cover charge was imposed).

### B. Enhanced Damages

Plaintiff also seeks enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii), which the Court will instead analyze under 47 U.S.C. § 553(c)(3)(B). Plaintiff seeks the maximum amount of enhanced damages, in this case $50,000. The Court has discretion to enhance the damages where "the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain . . ." 47 U.S.C. § 553(c)(3)(B). Plaintiff contends that it is impossible that Plaintiff's signal was mistakenly, innocently, or accidentally intercepted. The Court agrees that the evidence supports an inference that Defendants acted willfully in intercepting and exhibiting the Broadcast. See J & J Sports Prods, Inc. v. Mosley, No. 10-5126, 2011 WL 2066713, at *7 (N.D. Cal. Apr. 13, 2011) (awarding $2,500 in enhanced damages after finding that defendant acted willfully in unscrambling the signal transmitting copyrighted material). Defendants financially benefitted from the illegal interception both by avoiding paying the licensing fee and presumably attracting additional patrons who spent more time in the establishment watching the Broadcast. In light of Defendants' affirmative misconduct and in order to deter future willful violations, the Court recommends imposing an enhanced damages award of $5,000.

### C. Damages for Conversion

9

Plaintiff requests "compensatory damages in an amount according to proof against Defendants" for the conversion claim. (Dkt. No. 1, ¶ 34(d)). In Plaintiff's motion for default, Plaintiff seeks $1,800.00 in conversion damages based on "the amount Defendant would have been required to pay had he ordered the Program from Plaintiff." (Dkt. No. 23, p. 23). However, in the Affidavit of Joe Hand, Jr., submitted with Plaintiff's motion for default judgment, Mr. Hand, the President of Joe Hand Promotions, states that "for this particular event, if a commercial establishment had a maximum fire code occupancy of 100 persons, the commercial sublicense fee would have been $1,100."[4] (Dkt. No. 27 ¶ 8). The Court therefore recommends awarding Plaintiff $1,100.00 in damages for conversion.

### D.     Attorneys' Fees and Costs

Plaintiff seeks recovery of its costs and attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(b)(iii). As discussed above, this Order declines to use Section 605 in its analysis given the evidence that Defendants used cable as the means to intercept the Broadcast. Section 553 states that the Court may award reasonable attorneys' fees and costs. See 47 U.S.C. § 553(c)(2)(c). However, Plaintiff has not requested a specific amount of fees or costs, nor has counsel submitted any documentation of costs, expenses, fees, or rates. Because the record provides no basis for determining a reasonable award, the Court recommends that Plaintiff's request for attorneys' fees and costs be denied without prejudice to renewal accompanied by counsel's curriculum vitae or resume, billing and cost records, and any other documents supporting the request for reasonable attorneys' fees and costs.

### CONCLUSION

The Court recommends that Plaintiff's Motion for Default Judgment (Dkt. No. 20) be GRANTED as to the claim under 47 U.S.C. § 553 (Count II) and the conversion claim (Count III) and DENIED as to the claim under 47 U.S.C. § 605 (Count I). The Court recommends that judgment be entered in favor of Plaintiff against Defendants Lance Christian White, individually, and Rise Restaurant, d.b.a. British Bankers Club, on these

---

[4] In his affidavit Mr. Hand cites to Exhibit 1 "attached hereto" in support of his claim that the license fee was $1,100.00. Id. However, no Exhibit 1 is attached to his affidavit. Mr. Hand's representation as to the amount of the license fee is nontheless sufficient. See 28 U.S.C. § 1746.

10

claims.  The Court further recommends that Plaintiff be awarded a total of $7,500.00 in damages ($1,400 in statutory damages, $5,000 in enhanced damages, and $1,100 for conversion damages) and that Plaintiff's request for attorneys' fees and costs be denied without prejudice to renewal accompanied by the necessary supporting documentation.

Plaintiff shall serve a copy of this report and recommendation on Defendants within three days from the filing date of this Order and shall file a proof of service with this Court.

Any party may file objections to this report and recommendation with the district court judge within ten days after being served with a copy.  See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.  Failure to file objections within the specified time may waive the right to appeal the District Court's ultimate Order.

**IT IS SO ORDERED.**

Dated: August 2, 2011

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE